JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Marc Hayes | City of Philadelphia |

**(b)** County of Residence of First Listed Plaintiff  Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Steven C. Feinstein          Philadelphia, PA 19134
Feinstein & Fioravanti       (215) 598-2130
2633 E. Allegheny Ave

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane — [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product   Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability — [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|    & Enforcement of Judgment | Slander   Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability — [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|    Student Loans | [ ] 340 Marine   Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
|    (Excludes Veterans) | [ ] 345 Marine Product   Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability — **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|    of Veteran's Benefits | [ ] 350 Motor Vehicle — [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle — [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability — [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal   Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury — [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -   Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights — **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting — [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment — [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/   Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations — [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - — [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment — **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - — [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other — [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education — [ ] 555 Prison Condition | | | |
| | — [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

(In CIVIL RIGHTS: [X] 440 Other Civil Rights)

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC ss 1983, US Constitution

Brief description of cause:
Racial discrimination, violation of Prosedural and Substantive Due Process rights

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE  2/23/2024

SIGNATURE OF ATTORNEY OF RECORD
*Steven C. Feinstein*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 635 Bennett Lane, Perkasie, PA 18944

Address of Defendant: 1401 JFK Blvd. Philadelphia, PA 19102

Place of Accident, Incident or Transaction: Philadelphia, Pennsylvania

---

**RELATED CASE IF ANY:**

Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?　　　Yes ☐　No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?　　　Yes ☐　No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?　　　Yes ☐　No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?　　　Yes ☐　No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ **is not** related to any now pending or within one year previously terminated action in this court except as note above.

DATE:　　　　*Steven C. Feinstein*　　　　48737

　　　　Attorney-at-Law *(Must sign above)*　　　　Attorney I.D. # (if applicable)

---

**Civil** (Place a √ in one category only)

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Steven C. Feinstein , counsel of record *or* pro se plaintiff, do hereby certify:

☒　Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

☒　Relief other than monetary damages is sought.

DATE: 2/23/2024　　　*Steven C. Feinstein*　　　48737

　　　Attorney-at-Law *(Sign here if applicable)*　　　Attorney ID # (if applicable)

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **MARC HAYES** | : | |
| **635 Bennett Lane** | : | |
| **Perkasie Pa. 18944** | : | |
| | : | |
| **v.** | : | |
| | : | **NO.**   24-cv-00797 GAM |
| **CITY OF PHILADELPHIA** | : | |
| **1401 J.F.K. Boulevard** | : | |
| **Philadelphia, PA 19102** | : | |
|   **and** | : | |
| **KEVIN BETHEL** | : | |
| **400 N. Broad Street** | : | |
| **Philadelphia, PA 19130.** | : | |
|   **and** | : | |
| **DANIELLE OUTLAW** | : | |
| **4 World Trade Center** | : | |
| **150 Greenwich Street** | : | |
| **New York City, New York, 10007,** | : | |
|   **and** | : | |
| **JOHN DOES 1-20** | : | |

CIVIL ACTION
AMENDED COMPLAINT

1.    Plaintiff is an individual residing at the address above given.

2.    Defendant, City of Philadelphia is a political subdivision of the Commonwealth of

Pennsylvania, with its principal place of business located at the address above given.

3.    Defendant, Kevin Bethel is an adult individual and the current Police

Commissioner of the City of Philadelphia, having offices at the address above given.

4.    Defendant, Danielle Outlaw is an adult individual and the former Police

Commissioner of the City of Philadelphia, serving in that capacity from December 30, 2019, to

September 5, 2023, and currently working for the Port Authority of New York and New Jersey,

having offices located at the address above,'

5.     Defendants, John Does 1-20 are unknown individuals whose identity will be determined during discovery. They are believed to be members of the Philadelphia Police Department responsible for making decisions related to the termination of Plaintiff and the subsequent decisions relating the events described below.

6.     At all times relevant hereto, Defendant, City of Philadelphia, acted by and through its agents, servants, workmen, and/or employees who, at all times relevant hereto, were acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## VENUE AND JURISDICTION

7.     The Court has jurisdiction under 28 U.S.C. §1331 (federal question) and under 28 U.S.C. §1343 (civil rights).

8.     The acts or omissions made the basis of this suit occurred in Philadelphia County, Pennsylvania and in this judicial district, so venue is proper in this Court under 28 U.S.C. §1391.

## INTRODUCTION

9.     Plaintiff brings claims of race discrimination against Defendants for their violations of 42 U.S.C. §1981 through 42 U.S.C. §1983 for the deprivation of his property as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

10.     Plaintiff limits his requested relief resulting from these claimed violations to reinstatement to his position with the City of Philadelphia, backpay, compensatory and consequential damages, prospective injunctive relief, attorney's fees (42 U.S.C. §1988), litigation expenses, and costs.

8.     No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

9.     All required conditions precedent required under Title VII (42 U.S.C. §2000e et seq.) have been exhausted and/or performed by Plaintiff prior to the filing of this complaint:

a.   Plaintiff filed a charge of racial discrimination on June 9, 2023, with the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC"), within 300 days of the date of the adverse actions for which recovery is sought that is complained of herein.

b.    Plaintiff requested a Right to Sue Letter on January 24, 2024, as there had not been a decision on his charge of racial discrimination.

c.   Plaintiff received the Notice of Right to Sue on March 21, 2024. A copy of the Right to Sue Letter is attached hereto and marked as Exhibit "A".

10.     This suit is timely filed within the 90 days allowed from the receipt of this right to sue letter.

11.     Plaintiff is a citizen of the United States and the Commonwealth of Pennsylvania and resides in Bucks County, Pennsylvania.

12.     Plaintiff alleges that as a result of him being Caucasian he was subjected to a pattern of harassment and disparate treatment and knowingly and illegally harassed, subjected to unjustified and factually unsupported disciplinary actions as compared to other, non-Causation police offers who engaged in the same, similar or worse conduct as that alleged against Plaintiff and whom were similarly situated to Plaintiff at the time of the events described herein.

13.     The treatment was designed to further a policy of then Philadelphia Police Commissioner Danielle Outlaw of "changing the culture" of the Philadelphia Police Department("PPD") to make it more diverse in the wake of social unrest arising from the murder of George Floyd at the hands of the police in 2020.

14.     This policy included but was not limited to discriminating against seeking to remove Caucasian officers at or above the rank of sergeant and preventing them from being promoted in favor of similarly situated non- Caucasian officers similarly ranked.

15.     At the time of the implementation of this policy, Plaintiff was a Lieutenant who was in line for a promotion to Captain.

16.     At the time of the implementation of this policy, Defendant, Outlaw was the highest-ranking person in the PPD and as such, this policy of discrimination became the official policy of the PPD.

17.     Defendant, Bethel did not change, remove or alter this discriminatory policy after he became the Commissioner.

18.     As such, the discriminatory policy implemented by Defendant, Outlaw, remains the official policy of the PPD.

19.     In furtherance of this discriminatory policy Defendants treated Plaintiff disparately or pretextually in the terms and conditions of his employment compared with the way similarly situated, non-Caucasian employees who were accused of engaging in the same, similar or worse conduct were treated.

20.     Other Caucasian employees, including, but not necessarily limited to SGT. Joseph Stevenson, was subjected to a similar course of conduct that Defendants used against Plaintiff including but not limited to appealing favorable union grievance decisions related to a termination of employment based on an allegation that he engaged in domestic violence, even after the charges were dismissed.

21.     The conduct of the Defendants reflects a pattern of behavior that was part of a policy of the PPD, as implemented by Commissioner Outlaw, which was specifically designed to

discriminate against Caucasian police officers by treating them in a different manner than non-Caucasian police officers and denying them their procedural and substantive due process rights.

22.    The above-described discriminatory policy was applied to Caucasian police officers generally, but was more specifically applied to those Caucasian officers who had been promoted to positions of Sergeant or above to make room for non-Caucasian officers to be moved into positions with the ability to influence the "culture" of entire department.

23.    As more fully set forth below, the City of Philadelphia and the PPD treated similarly situated non-Caucasian officers who were accused of the same, similar or worse conduct in a disparate manner thus creating a two-tiered disciplinary process favorable to non-Caucasians.

## FACTUAL ALLEGATIONS

24.    Plaintiff is a Caucasian male who was first hired by the PPD on August 5, 2004, who had over 19 years of service working for the PPD and the City of Philadelphia when he was terminated for allegedly sexually harassing two female police officers.

25.    At the time of Plaintiff's termination, he had a positive employment record, including multiple commendations, who had risen to the position of Lieutenant was considered a very good police officer and Lieutenant, and had a good reputation across PPD and the City of Philadelphia.

26.    Plaintiff had been a Lieutenant for approximately seven years at the time he was terminated.

27.    Plaintiff was promoted on several occasions prior to his termination.

28.    Plaintiff served admirably in the PPD for nineteen years, during which time he received several commendations.

29.    Prior to his termination, Plaintiff did not have any significant disciplinary history.

30.     Plaintiff's termination occurred during the tenure of Defendant, Outlaw.

31.     At the time of Plaintiff's termination, he was scheduled to be promoted to Captain.

32.     Plaintiff followed the union grievance procedure after his termination.

33.     The City of Philadelphia was found to have acted improperly at every stage of the disciplinary procedure.

34.     The City of Philadelphia was repeatedly ordered to reinstate Plaintiff to active duty, compensate him for his back pay and provide him with other relief.

35.     Plaintiff admitted engaging in the factual conduct of which he was accused and had apologized to the alleged victims and the department on more than one occasion but contended that termination was too severe a penalty for the infraction.

36.     Plaintiff's position regarding the penalty has been recognized as correct at every stage of the grievance process.

37.     Neither of the female police officers ever testified that they had been sexually harassed by Plaintiff.

38.     The arbitrator found that a 50-day suspension without pay was a sufficient penalty for the infraction. A copy of the award is attached hereto and marked as Exhibit "B".

39.     The City of Philadelphia persisted in its position that Plaintiff deserved nothing less than termination despite the arbitrator's decision.

40.     The City of Philadelphia appealed the arbitrator's decision to the Commonwealth Court.

41.     The decision to appeal the arbitration award to the Commonwealth Court was in furtherance of the discriminatory policy implemented by Defendant, Outlaw and reflected

disparate treatment for Plaintiff, as compared to other, similarly situated, non-Caucasian police officers.

42.     On January 8, 2024, the Commonwealth Court affirmed the arbitration award. A copy of the opinion is attached hereto and marked as Exhibit "B".

43.     The City of Philadelphia has filed for yet another review of the arbitrator's decision in front of the Pennsylvania Supreme Court.

44.     The decision to seek a review from the Pennsylvania Supreme Court was made during the tenure of Defendant, Bethel.

45.     The decision to appeal the arbitration award to the Pennsylvania Supreme Court was in furtherance of the discriminatory policy implemented by Defendant, Outlaw and maintained by Defendant, Bethel, and reflected disparate treatment for Plaintiff, as compared to other, similarly situated, non-Caucasian police officers.

46.     The Pennsylvania Supreme Court has not yet decided whether to accept the appeal as of the filing of this Amended Complaint.

## INSPECTOR CARL HOLMES

47.     Inspector Carl Holmes was accused of sexually assaulting three female police officers.

48.     Inspector Holmes is African American above the rank of Sergeant.

49.     Each of the three female officers testified regarding Inspector Holmes' conduct at a grand jury.

50.     As a result of Inspector Holmes' conduct, the City of Philadelphia paid over one million dollars to the victims of his sexual harassment and assault.

51.    Inspector Holmes was criminally indicted for the sexual assaults of the three female officers.

52.    Inspector Holmes was terminated from his position with the PPD after he was criminally indicted.

53.    Eventually, the charges against Holmes were dropped after the victims could not or would not testify at the trial.

54.    The termination of Inspector Holmes took place during Defendant, Outlaw's tenure as commissioner.

55.    Inspector Holmes challenged the termination of his position.

56.    There was an arbitration decision in favor of Inspector Holmes' reinstatement.

57.    The City of Philadelphia did not appeal the arbitration decision despite the grand jury testimony and the civil settlement(s).

58.    The decision not to appeal the arbitration decision was made during the tenure of Defendant, Bethel.

59.    Inspector Holmes and Plaintiff were similarly situated in that they were both long term members of the Philadelphia Police Force, both were at or above the rank of Sergeant and both were terminated based on allegations of sexual misconduct, although the allegations against Inspector Holmes were more severe than those made against Plaintiff.

60.    Inspector Holmes was reinstated to his position without a loss of rank.

61.    The reinstatement took place during the tenure of Defendant, Bethel.

62.    The reinstatement of Inspector Holmes was consistent with and in furtherance of the discriminatory policy implemented by Defendant, Outlaw and adopted by Defendant, Bethel as more fully set forth above.

63.     The only discernible difference between the situation involving Plaintiff and that of Inspector Holmes was that they were of different races.

## COUNT I

### VIOLATIONS OF 42 U.S.C. §1981 THROUGH 42 U.S.C. §1983

64.     Plaintiff incorporates by reference the averments contained in all previous paragraphs as if more fully set forth herein.

65.     It is believed and therefore averred that the only reason that the City of Philadelphia keeps appealing the determination to reinstate Plaintiff to his position with the PPD was to further Defendant, Outlaw's official policy of seeking a more diverse police department though the disciplinary process by discriminating against Caucasian officers, particularly those of the rank of Sergeant or higher.

66.     As a direct and proximate result of Defendants' conduct, Plaintiff was subjected to disparate terms and conditions of employment by the City of Philadelphia and the PPD compared to the way non-white police officers have been treated.

67.     Defendants' treatment of Plaintiff was in violation of 42 U.S.C. §1981 through 42 U.S.C. §1983 as he was treated differently than other officers based on his race.

68.     Plaintiff is entitled to damages pursuant to the remedies available to him under 42 U.S.C. §1981 through 42 U.S.C. §1983.

69.     Defendants' discriminatory conduct was willful, intentional and designed to hurt Plaintiff.

## COUNT II
### VIOLATION OF PROCEDURAL DUE PROCESS RIGHTS

70.     Plaintiff incorporates by reference the averments contained in all previous paragraphs as if more fully set forth herein.

71.     Plaintiff, as a public employee, had a constitutionally protected property right in his position as a Philadelphia Police Officer.

72.     As such, Defendant was required to comply with Plaintiff's Procedural Due Process Rights as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution, prior to terminating his position with the PPD.

73.     At a minimum, Procedural Due Process requires that there be notification and an opportunity for the aggrieved party to be heard.

74.     In order to comply with an individual's Procedural Due Process Rights, there cannot be a decision made prior to the ability of the aggrieved party to be heard.

75.     Defendants, individually and/or jointly made the decision to terminate Plaintiff prior to conducting the Internal Affairs interview, which never, in fact, took place.

76.     Defendants, individually and/or jointly denied Plaintiff the opportunity to heard.

77.     Defendant thwarted Plaintiff's opportunity to defend his constitutionally protected property rights at every possible term and in every possible way.

78.     By making the determination that Plaintiff was going to be terminated without the benefit of an Internal Affairs interview, Defendants, individually and/or jointly, denied Plaintiff his Procedural Due Process Rights.

79.     Defendants' denial of Plaintiff's Procedural Due Process rights was done, knowingly and intentionally in an effort to hurt Plaintiff.

80.     As a result of Defendants' denial of Plaintiff's Procedural Due Process Rights, Plaintiff sustained significant and ongoing damages.

## COUNT III
## VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

81.     Plaintiff incorporates by reference the averments contained in all previous paragraphs as if more fully set forth herein.

82.     Plaintiff, as a public employee, had a constitutionally protected property right in his position as a Philadelphia Police Officer.

83.     As such, Defendant was required to comply with Plaintiff's Substantive Due Process Rights as guaranteed by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment to the United States Constitution, prior to terminating his position with the PPD.

84.     Plaintiff was terminated from his position as a Philadelphia Police Officer, as a result of which, Plaintiff had his Constitutionally Protected Property Right in his position as Philadelphia Police Officer taken away from him based solely upon a claim of sexual harassment despite the fact that neither of the alleged victims ever testified that they were sexually harassed, thus making the allegations unproven.

85.     Defendants terminated Plaintiff's employment despite the fact that it did not prove the allegations against him.

86.     Therefore, Defendants terminated Plaintiff's employment without a rational basis, as confirmed by the Arbitrator.

87.     Defendants improperly deprived Plaintiff of a Constitutionally Protected Property Right without a substantive reason.

88.     Defendants 'conduct was willful and intentional.

## DAMAGES

89.     Because of the statutorily impermissible and willful, if not malicious, acts of Defendants, Plaintiff seeks prospective injunctive relief, attorney's fees and costs.

90.     Specifically, Plaintiff seeks an order of reinstatement into his position with all benefits returned and an order instructing Defendants to cease discriminating against Plaintiff, as well as reasonable attorney's fees, and costs pursuant to 42 U.S.C. §1981 through 42 U.S.C. §1983, and 42 U.S.C. §1988.

## EQUITABLE RELIEF

91.     Equitable and compensatory damages are the only means of securing adequate relief for Plaintiff.

92.     Plaintiff suffered, is now suffering, and will continue to suffer irreparable injury, from the unlawful conduct by Defendants, as set forth herein until and unless enjoined by the Court, to include but not be limited to reinstatement of his position with benefits returned, 42 U.S.C. §1983 (42 U.S.C. §1981).

93.     Plaintiff seeks awards of back pay and front pay for the loss of income as a result of his discharge by the City of Philadelphia, Plaintiff's employment and as a result of Plaintiff's negative experiences in that regard to include the unfair treatment, discipline, and evaluation compared to other similarly situated non-white employees.

94.     Plaintiff is entitled to awards of pre- and post-judgment interest on any amounts awarded to him.

95.     Plaintiff is entitled to punitive damages based on Defendant's intentional conduct in discriminating against him and intentionally denying Plaintiff his procedural and substantive due process rights.

## LEGAL RELIEF

96.     Plaintiff seeks compensatory, expectation, and/or consequential damages, as well as punitive damages due to the illegal conduct of the City of Philadelphia as alleged herein related to Plaintiff's disparate treatment claims

97.     Plaintiff seeks attorney's fees, costs, and expert fees. 42 U.S.C. §1988.

### PRAYER FOR RELIEF

98.     Plaintiff respectfully requests that this Honorable Court enter judgment:

a.   Granting Plaintiff all equitable damages including reinstatement of his position as a Philadelphia Police Officer, front pay, lost benefits and profits;

b.   Awarding Plaintiff compensatory, consequential, and punitive damages;

c.    Granting Plaintiff pre and post-judgment interest in the highest lawful amount;

d.   Granting Plaintiff reasonable attorney's fees, together with his costs; and

e.    Such other and further relief as the Court determines justice and equity so require.

Respectfully submitted,

FEINSTEIN & FIORAVANTI

BY:_____
        Steven C. Feinstein, Esquire
        Attorney ID No: 48737
        2633 E. Allegheny Avenue
        Philadelphia, PA 19134
        Office: 215.598.2130
        Email:sfeinstein@portrichmondlawcenter.com
        Attorney for Plaintiff

Date: February 16, 2022

EXHIBIT "A"

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/21/2024

**To:** Mr. Marc A. Hayes
635 Bennett Lane
Perkasie, PA 18944

Charge No: 530-2023-05575

EEOC Representative
Legal Unit (267) 589-9707

---

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
03/21/2024

Karen McDonough
Deputy District Director

**Cc:**

Lashawn Hand, ESQ
1515 Arch Street, 15th Floor,
Philadelphia, PA 19102

Steven C. Feinstein, ESQ
Port Richmond Law Center
2633 E. Allegheny Ave
Philadelphia, PA 19134

Please retain this notice for your records.

EXHIBIT "B"

**AMERICAN ARBITRATION ASSOCIATION**

-------------------------------------------------------------------X

| | | |
|---|---|---|
| In the Matter of the Arbitration | : | |
| | : | AAA Case No. |
| between | : | 01-20-0015-6622 |
| | : | |
| FRATERNAL ORDER OF POLICE, | : | Opinion & Award |
| LODGE NO. 5 | : | |
| "Union" | : | Re: Discharge of |
| | : | Marc Hayes |
| - and - | : | |
| | : | Hearings: June 17 & 22, 2022 |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| | : | |
| "City" | : | |

-------------------------------------------------------------------X

**APPEARANCES**

> **For the Union**
>
> WILLIG, WILLIAMS & DAVIDSON
> Thomas M. Gribbin, Jr., Esq.
>
> **For the City**
>
> CITY OF PHILADELPHIA LAW DEPARTMENT
> Elizabeth U. Okakpu, Esq., Assistant City Solicitor

**BEFORE:** David J. Reilly, Esq., Arbitrator

EXHIBIT A-001

## BACKGROUND

The Department discharged Lieutenant Marc Hayes, effective July 9, 2020. It did so based upon several charges stemming from a series of texts and a video he exchanged with two subordinates on August 13, 2018.

These charges asserted the following violations of the Department's Disciplinary Code: (1) Section 1-§024-10 - Conduct Unbecoming – Any act, conduct or course of conduct which objectively constitutes sexual harassment; (2) Section 1-§021-10 – Any incident, conduct or course of conduct which indicates that an employee has little or no regard for his or her responsibility as a member of the Police Department; (3) Section 1-§025-10 – On duty or job related inappropriate sexually based communication(s) conveyed in any manner; and (4) Section 8-§003-10 – Failure to properly supervise subordinates. (City Exhibit 6.)

The Union contends the City lacked just cause to impose this discipline. It asks that Hayes be reinstated to his former position with the Department and be made whole for all pay and benefits lost as a consequence of his discharge. It also requests that the City be directed to revise Hayes' personnel records to expunge all reference to his discharge to the extent consistent with governing law.

The relevant facts of this case, including the areas of dispute, may be set forth succinctly:

### Hayes' Employment History

At the time of his discharge, Hayes had been a member of the Department for nearly eighteen years. During his tenure, the Department promoted him twice; elevating

EXHIBIT A-002

him to the rank of Sergeant in or about 2006 and the rank of Lieutenant in or about 2015.[1]

He has no record of discipline in the past seventeen years.  He received his lone discipline in 2005 due to the loss of his service weapon while on duty.

His annual performance reports from 2003 – 2018 reflect that he has consistently received satisfactory ratings, with his rating officers describing his performance as "outstanding" and "exceptional." (Union Exhibit 3.)[2]

**Events of August 13, 2018**

The circumstances leading to Hayes' discharge arose from events that occurred on August 13, 2018.

On that day, the personnel under Hayes' supervision within the 24th District included Police Officers Officer 1 and Officer 2 who had a court appearance that morning.[3]

Upon learning that Officer 1 and Officer 2 had completed their court assignment, Hayes commenced a text conversation regarding whether he would release them from duty for the day.  (City Exhibit 2.)[4]

In doing so, he proposed granting such release if they correctly answered a question before he completed eating a sandwich.  (City Exhibit 2.)  After learning from

[1] In 2017, Hayes took the Captain's promotional exam and was placed on the list of successful candidates. However, in October 2018, the Department cancelled his pre-promotional interview due to the Internal Affairs Division investigation that subsequently led to his discharge.

[2] Most recently, in 2018, Hayes' then commanding officer Captain Stephen Clark stated, "Marc, you have performed your duties in an exemplary manner.  I can count on you to steer the ship admirably, in my absence.  Your personnel are highly motivated and effective a direct reflection of the superior leadership, coaching and guidance you provide."  (Union Exhibit 3.)

[3] Police Officer 1 has since been promoted to the rank of Detective.

[4] According to the testimony of Officer 1 and Hayes, an informal practice known as slide time exists within the Department.  Under this practice, officers who complete a court appearance before the conclusion of their shift are permitted with supervisor authorization to leave early, when logistics, such as the unavailability of a patrol car, would render it impractical for them to return to their District for the balance of their tour.

EXHIBIT A-003

Officer 2 that Officer 1 was in the restroom, he advised that they both needed to participate.[5]

When Officer 1 did not return promptly, he texted, "2 questions. 1 is true or false and ur

running out of time.  Other court cops r getting them right.  Someone has to work street."

(City Exhibit 2.)

      When Officer 2 and Officer 1 were eventually together, Hayes posed a question asking

for a Spanish equivalent of "Oh Daddy."  (City Exhibit 2.)[6]  This text then triggered an

exchange in which Officer 2 commented, "Papi* come on teach your wife Spanish lol.  I'm

sure white ladies say some crazy shit to their men lol."  Hayes, in turn replied, "U say

wife.  I spell it whiff.  Y teach her Spanish.  Heard that enough in my lifetime.  Not the

same.  I only been with 1 lady in my lifetime and white she is.  Yes. I was virgin until 21.

First time I had a baby."  (City Exhibit 2.)

      After Hayes released them both from duty for the day, Officer 2 texted Hayes and

Officer 1 a picture of heavy traffic with a note, "Still tryna get home."  (City Exhibit 2.)

Hayes, in turn, replied: "Hey.  If I show u guys something I just found out and it's on the

weird side will u get mad.  I just got a dog for kids.  Horrible breath I find out y."  (City

Exhibit 2.)

      Eventually, he texted them both a one minute twenty-seven second video,

depicting a small dog performing oral sex on a woman.  (City Exhibits 2 & 9.) Officer 2

subsequently replied, "Please don't send me things like that."  (City Exhibit 2.)

---

[5] Officer 2 in reference to Officer 1 texted, "She's peeing one sec," to which Hayes replied, "She always pees." (City Exhibit 2.) After sending photos of his sandwich, Hayes texted, "Really trying here.  Mayb bad one and it's a multi multi wiper," followed by a poop emoji.  (City Exhibit 1-2.)

[6] Portions of the question are beyond the borders of the text produced.  (City Exhibit 2.) In her November 16, 2018 statement to IAD investigator Smith, Officer 1 recalled Hayes asking three questions, including what do men want Spanish women to say to them, and what are the colors of her hair.  (City Exhibit 3A.)

EXHIBIT A-004

**EEO & Internal Affairs Division Investigations**

Subsequently, on or about October 30, 2018, an anonymous letter was found in the 24th District Headquarters, alleging that on August 13, 2018, Hayes sent a sexually explicit video to two subordinate female officers during working hours. The letter was forwarded to the Internal Affairs Division ("IAD") and triggered investigation by its EEO and Investigative Support Services ("ISS") Teams. The former was led by Lieutenant Brent Conway and the latter by Detective Jeanette Smith.

In his testimony, Conway averred that his investigation included interviewing Officer 1 Officer 2 and all other officers that had access to the office where the anonymous letter was found, except Hayes. In addition, he reported obtaining a copy of the video and the texts that Hayes, Officer 1 and Officer 2 had exchanged on August 13, 2018.

According to Conway, the report of his investigation was not formally completed until 2021, but had been submitted for approval through the chain-of-command in or about July 2020. This report, he said, included a finding substantiating that Hayes had committed sexual harassment in violation of City and Department policy. (City Exhibits 4-5.)[7]

Recounting her ISS investigation of this matter, Detective Smith related that she, too, secured the texts and video, executed search warrants to obtain such materials directly from the cellular service providers, confirmed all relevant cell phone numbers

---

[7] Department Directive 8.7 specifies that employees are explicitly prohibited from engaging in any conduct that would violate the City's Sexual Harassment Policy. (City Exhibit 5.) The City's Policy defines sexual harassment as unwelcome sexual advances, unwelcome requests for sexual favors or other unwelcome verbal or physical conduct of a sexual nature when: (1) submission to that conduct is made explicitly or implicitly a term or condition of employment; (2) submission to or rejection of that conduct is used as a basis for employment decisions; or (3) the conduct has the purpose or effect of interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment." (City Exhibit 4.) The Policy states further that "unwelcome means unwanted." No employee should assume that any such conduct is welcome by others." (City Exhibit 4.)

EXHIBIT A-005

heal

and interviewed Officer 1 Officer 2 and Captain Clark.  She reported completing these steps and concluding her active investigation in Summer 2019, at which time she referred the matter to the District Attorney's Office for a determination of possible criminal charges due to the obscene nature of the video and its depiction of bestiality.

Following receipt of the District Attorney's Declination Memorandum, dated July 8, 2021, she completed her investigation report and submitted it for approval.  (City Exhibits 3A-3B.)  Her report, dated August 12, 2021, was approved by her superior officer on August 27, 2021.  (Employer Exhibit 3A.)

## Officer 1 **Testimony**[8]

In her testimony, Officer 1 verified the texts that she, Officer 2 and Hayes exchanged on August 13, 2018, as well as the video received that day from Hayes.  She confirmed that when interviewed by Lieutenant Conway, she described Hayes' texts as a "joke" (Union Exhibit 2.)  In addition, she verified informing Conway that she did not believe that Hayes had sent the video in an attempt to sexually harass her.  (Union Exhibit 1.)  The video, she said, did not offend her, but she considered it "gross and inappropriate."

She also averred that prior to August 13, 2018, Hayes had not engaged in any inappropriate behavior towards her.

In addition, she denied authoring the anonymous letter that triggered the IAD investigation or requesting anyone to do so on her behalf.

Addressing an October 31, 2018 conversation with Hayes, she recalled he apologized for sending the video and asked if she still had a copy.  According to Officer 1 he stated further that if called to IAD, she could say she has no recollection of it.  She averred replying that she would not lie.

---

[8] Police Officer Officer 2 did not testify at the hearing in this matter.

EXHIBIT A-006

**Marc Hayes' Testimony**

In testifying, Hayes affirmed his August 13, 2018 exchange of texts with <span style="background-color:#d3d3d3">Officer 1</span> and <span style="background-color:#d3d3d3">Officer 2</span> regarding their early release that day, as slide time.  He reported joking as to the need for them to correctly answer a question for that purpose, noting they both knew early release would be granted.

He also described sending the video to them as a part of a joke he had been sharing regarding a dog with bad breath.  He maintained having no intent to harass them.

According to Hayes, shortly after sending the video, he realized that doing so had been a mistake.  In response, he reported promptly apologizing to both <span style="background-color:#d3d3d3">Officer 1</span> and <span style="background-color:#d3d3d3">Officer 2</span>

In addition, he described making a personal commitment to improve the culture within the Department for all officers.  Putting this vow in to practice, he said, included: (1) posting information regarding the Department's EEO policy within the 24th District office; and (2) conducting meetings with his squad to review expected conduct and the Department's EEO complaint procedure.

Following August 13, 2018, he maintained never having exchanged similar text messages nor sharing any non-work related videos with fellow officers.

Upon learning of the anonymous letter that surfaced in October 2018 regarding his sharing of the video, he recalled feeling bad that she and <span style="background-color:#d3d3d3">Officer 2</span> would be forced to address this matter again.  He confirmed having a conversation at or about that time with <span style="background-color:#d3d3d3">Officer 1</span> concerning their children.  According to Hayes, neither in this conversation nor at any other time did he attempt to influence what she or <span style="background-color:#d3d3d3">Officer 2</span> would say when

EXHIBIT A-007

questioned regarding the video, nor suggest they could express a lack of recall.  He pointed out that the matter was already then well known

In or about November 4, 2018, Hayes reported being placed on restricted duty and detailed from the 24th District to the DVIC in response to the IAD investigation of this matter.  He related never being interviewed or afforded an opportunity to explain his conduct relative to that investigation.

**Hayes' Discharge**

Effective July 9, 2020, Commissioner Danielle Outlaw, by a Commissioner's Direct Action ("CDA"), discharged Hayes based upon four violations of the Department's Disciplinary Code, as identified by Deputy Commissioner Bryan Nash. The first three concerned conduct unbecoming -- Section 1-§024-10 (sexual harassment); Section 1-§021-10 (conduct showing little or no regard for Department responsibilities); and Section 1-§025-1 (on duty inappropriate sexually based communications) – and the fourth involved a failure to properly supervise – Section 8-§003-10.  Only the first two charges carry a penalty range that includes dismissal for a first offense. Nash nonetheless recommended dismissal as the penalty for all four.  (City Exhibit 7.)

Although the IAD investigation had not yet been finalized as of that date, Commissioner Outlaw averred to having sufficient information to proceed with a CDA. She recalled, in particular, that all interviews had been conducted and all documentary evidence had been gathered.  Conclusion of the investigation, she stated, was pending the District's Attorney determination on the criminal referral made by IAD.

On the basis of the available information, she reported concluding that Hayes had engaged in extremely inappropriate behavior that violated the City's Sexual Harassment

EXHIBIT A-008

Policy and represented a continuing course of conduct.  Describing his offenses as bold, she concluded a strong response was required; namely discharge.[9]

**Procedural History**

Hayes' discharge prompted the instant grievance. (Joint Exhibit 2.)  When the parties were unable to resolve the matter at the lower stages of the grievance procedure, the Union demanded arbitration.  (Joint Exhibit 3.)  Pursuant to their contractual procedures, the parties selected me to hear and decide the case.  (Joint Exhibit 1.)

I held a hearing in this case on June 17, 2022 at the offices of the American Arbitration Association in Philadelphia, PA.  The hearing concluded on June 22, 2022, which, by agreement of the parties, was conducted by videoconference.  At the hearing, the parties each had full opportunity to present evidence and argument in support of their respective positions. They did so.  Upon the conclusion of the hearing on June 22, 2022, I declared the record closed as of that date.

**DISCUSSION AND FINDINGS**

**The Issue:**

The parties have stipulated that the issues to be decided are as follows:

1.  Did the City have just cause to discharge the grievant, Marc Hayes, effective July 9, 2020?

2.  If not, what shall be the remedy?

**Positions of the Parties**

The parties' respective positions may be summarized as follows:

---

[9] Outlaw became the Department's Commissioner in February 2020.  On cross-examination, she stated having no knowledge as to the reason that no disciplinary action had been taken as to Hayes prior to her appointment by either former Police Commissioner Ross, who resigned in August 2019, or Interim Commissioner Coulter, who served in that capacity from August 2019 – February 2020.

EXHIBIT A-009

### *City's Position*

The City contends that its discharge of Hayes was for just cause.  It maintains that the evidence conclusively demonstrates that he is guilty of the charged offenses, which warranted his termination.

The critical facts, it stresses, are largely uncontested.  It highlights that on August 13, 2018, Hayes engaged in an extended exchange of text messages with his subordinates Officer 1 and Officer 2 which were inappropriate and laced with sexual innuendo. After releasing them from duty, it points out, he continued and escalated this offending conduct by sending them each a copy of a sexually explicit video, which he transmitted twice to ensure it was received.

Subsequently, it notes, when this conduct became the subject of an IAD investigation based upon an anonymous complaint, he exacerbated his transgressions by attempting to influence the statements provided by Officer 1 and Officer 2  He did so, it states, by suggesting they could feign a lack of recall when questioned regarding the video.

Despite this urging, it avers, both Officer 1 and Officer 2 truthfully reported the events of August 13, 2018, and thereby substantiated Hayes' misconduct, which largely stands admitted.

Contrary to the Union's assertion, it argues, the evidence presented substantiates all four charges and not simply the one involving an inappropriate sexually based communication (i.e., Section 1-§025-1).

It asserts that Hayes' attempt to minimize or excuse his misconduct necessarily fails. According to the City, it matters not that his offending behavior came to light

EXHIBIT A-010

through an anonymous report, as opposed to a formal EEO complaint filed by Officer 1 and/or Officer 2  Likewise, it argues, neither his stated intent nor his reported apologies to Officer 1 and Officer 2 provide any defense.  Objectively measured, it concludes, Hayes' conduct on August 13, 2018 and October 2018 confirms his violation of each of the four cited sections of the Department's Disciplinary Code.

In sum, it reasons, Commissioner Outlaw properly assessed the egregiousness and totality of Hayes' misconduct and reasonably concluded that discharge was warranted.  Indeed, it notes, doing so was necessary to maintain a culture within the Department that does not tolerate sexual harassment.  For this same reason, it notes, Hayes' rank escalated the gravity of his offenses, inasmuch as the Department's supervisors are its first line of defense in combating and eliminating sexual harassment.

Accordingly, it asks that Hayes' discharge be sustained on the basis of all four charges, and the Union's grievance be denied.

### *Union's Position*

The Union, on the other hand, maintains that the City lacked just cause to discharge Hayes.  It submits that the City has failed to satisfy its burden of demonstrating that he is guilty of the charged offenses.

As a preliminary matter, it asserts that the applicable standard of proof is one of clear and convincing evidence.  The nature and gravity of the alleged misconduct, it states, demands as much.  *Champion Spark Plug Co.,* 93 L.A. 1277 (Dobry 1989).

Judged by this standard, it asserts, the City's case fails to satisfy several of the well recognized seven-tests of just cause.

EXHIBIT A-011

In particular, it contends, the City's investigation of Hayes's alleged offenses falls short. Commissioner Outlaw's testimony, it stresses, confirms that IAD had not yet completed its investigation when she decided to discharge Hayes by a CDA. Indeed, citing Conway and Smith's testimony, it maintains, an IAD investigation is not completed until the investigator's report has been submitted and approved through the chain of command, which here, was August 27, 2021. In addition, it notes that Conway confirmed that such submission might trigger requests for the investigator to do more work.

Further, it points out, Commissioner Outlaw acted without affording Hayes an opportunity to be heard. By so proceeding, it contends, the City deprived him of basic due process. Inasmuch as due process is an integral element of just cause, this failure precludes sustaining Hayes' discharge. *Newspaper Agency Corp.,* 119 L.A. 926 (McGurdy 2004).

Turning to the substance of the charges, it points out, they do not specifically reference the City's sexual harassment policy. In any event, it stresses, the evidence presented does not satisfy accepted legal standard for proving sexual harassment. Simply put, it notes, even crediting all of the City's evidence, Hayes' alleged sexual misconduct was not severe or pervasive such that it altered Officer 1 or Officer 2's terms and conditions of employment, and as such, cannot substantiate a charge of sexual harassment.[10]

---

[10] The United States Equal Employment Opportunity Commission explains that sexual harassment (i.e., unwelcome conduct based upon sex) becomes unlawful where the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

EXHIBIT A-012

It disputes that the City's claim that Hayes' texts to Officer 1 and Officer 2 were sexual in nature. A review of the documentary evidence, it states, demonstrates that claim is false.

Turning to the video, it acknowledges, based on content, Hayes sharing of it was improper. However, it argues, he did not commit sexual harassment in doing so. In support it cites: (1) Officer 1 acknowledged she was not offended; (2) Officer 1 and Officer 2 both declined to file an EEO complaint when offered that opportunity by Conway; and (3) Officer 1 acknowledged Hayes could remain her supervisor, noting she had no issue with his conduct toward her or any other female staff.

In sum, it avers that the sharing of the video was a poor attempt at humor by Hayes, for which he is deeply remorseful. As such, it contends, the video serves only to support the charged violation of Department Disciplinary Code Section 1-§025-10, for which the prescribed penalty under the Agreement is a reprimand to a fifteen-day suspension. Any attempt by the Department to enhance that penalty, it states, constitutes a violation of the Agreement.

Addressing the allegation that Hayes' attempted to improperly influence the IAD investigation of this matter, it asserts the record lacks substantiating evidence. In support, it cites Hayes' testimony that while he apologized to Officer 1 for sending the video, he never suggested that she delete the video and/or state a lack of recall when questioned as to its contents.

In sum, it asserts that the City has failed to demonstrate that it had just cause to discharge Hayes, an eighteen-year and well regarded veteran of the Department. At most, it states, the Department had just cause to discipline him for violating Department

EXHIBIT A-013

Disciplinary Code Section 1-025-10 by transmitting the video, which carries a penalty range of reprimand to fifteen day suspension.

Accordingly, for all these reasons, it asks that the grievance be granted and the requested relief be awarded.

## Opinion

There can be no dispute that the City's Police Department has a right and a duty to ensure that its officers adhere to certain standards of conduct. This expectation, no doubt, includes the requirement that officers adhere to policies proscribing sexual harassment and the transmittal on duty of inappropriate sexually based communications. Indeed, the City's obligations under various applicable anti-discrimination statutes mandate as much in meeting its obligation to provide all of its employees with a work environment free from discrimination and objectionable behavior, which necessarily includes sexual harassment.

Enforcement of such workplace standards must include a procedure for the reporting and investigation of complaints of violations. Plainly then, any attempt to interfere with such an investigation by encouraging or suggesting non-cooperation by another officer runs afoul of such officer's inherent responsibilities.

Officers who breach these obligations by engaging in sexual harassment, transmitting inappropriate sexual material on duty or interfering with an investigation of such misconduct can and should expect that serious discipline will result.

The City, of course, carries the burden of proof here. It must demonstrate by a preponderance of the credible evidence that Hayes committed the charged offenses. It must also establish that the level of discipline imposed is appropriate. The Union, on the

-14-

other hand, has no corresponding burden.  It need not disprove the charges against Hayes. Indeed, he is entitled to a presumption of innocence.

After carefully reviewing the record and giving due consideration to the parties' respective arguments, I am convinced that the City has not fully satisfied its burden. My reasons for this conclusion follow.

### Section 1-§024-10 (Sexual Harassment)

I turn first to the charge accussing Hayes of sexual harassment, one of the two alleged offenses that carry a penalty of dismissal.

Department Directive 8.7 defines prohibited conducted, as including sexual harassment, and, in doing so incorporates the proscriptions of the City's Sexual Harassment Policy.  It also states that sexual harassment includes an attempt by an employee to impose his/her "sexual desires, will or wish, fantasy or preference on another employee through an offensive act, deed, gesture or comment and such conduct interferes with the employee's terms or conditions of employment."  (City Exhibit 5 at 2.)

The City's Policy defines sexual harassment as "unwelcome sexual advances for sexual favors, or other unwelcome verbal or physical conduct of a sexual nature when  . . . the conduct has the purpose or effect of interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment.  It states further "unwelcome means unwanted" and "no employee should assume any such conduct is welcome by others."  (City Exhibit 4 at 3.)

As a preliminary matter, I am not persuaded by the Union's claim that this charge, as well as the other three, must be dismissed, as lacking just cause, due to the Department's failure to complete the EEO/IAD investigations before discharging Hayes.

EXHIBIT A-015

To the contrary, although the investigations may not have been finalized in terms of having all required sign offs, as of Hayes' July 9, 2020 dismissal, I am satisfied from the testimonial and documentary evidence presented that the necessary information to make that decision had been already compiled.  (City Exhibits 1-3.) Indeed, as Detective Smith testified, by 2019, she had completed all necessary interviews and gathered all documents and the video, before referring the matter to the District Attorney for review of possible criminal charges.

In assessing whether Hayes' conduct on August 13, 2018 violated the Department's Directive regarding sexual harassment, I have considered all of the text messages he exchanged that day with Officer 1 and Officer 2  Having done so, I am compelled to conclude that they do not meet the standard set by the Directive, which incorporates the City's Sexual Harassment Policy.

Simply put, even accepting the City's claim that the texts included sexual innuendoes, I do not find sufficient basis to conclude they were unwelcome or rose to the level of creating a sexually hostile work environment.  Instead, from my review, the texts reflect some questionable banter in which Hayes, Officer 1 and Officer 2 all appeared to willing engage.[11]

Officer 1 testimony and her prior statements in connection with the EEO and IAD investigations confirm this conclusion.  Indeed, she averred not reporting Hayes' August 13, 2018 text exchange because she did not consider it to be sexually harassing.  When asked during her EEO interview to categorize the text message conversation that she and

---

[11] This finding should not be construed as an endorsement of such text messages.  To the contrary, even allowing for some level of banter between a ranking officer and his/her subordinates, Hayes, Officer 1 and Officer 2 exceeded reasonable bounds, such as with Hayes and Officer 2's discussion of Officer 1's bathroom habits.  As the superior officer, Hayes had the responsibility to ensure their official on-duty text conversations remained professional and did not stray into such inappropriate topics.

EXHIBIT A-016

Officer 2 had with Hayes that day, she replied, "I would say it was a joke; him trying to be funny." (Union Exhibit 2 at 5.)[12]

In sum, while Officer 1 might have found Hayes' texts annoying and would have preferred not to play a question and answer game to receive slide time, her testimony, the only direct evidence other than the text messages, does not support a finding that Hayes' committed sexual harassment by his August 13, 2018 text exchange with her and Officer 2

The video that Hayes shared with Officer 1 and Officer 2 however, is another matter. It contains an extremely graphic depiction of a sex act involving a woman and a dog. Simply put, it can be fairly characterized as very disturbing. As such, it, no doubt, has the potential to offend and create a hostile work environment based upon sex.

The issue then is whether that was the case here. In answering this question, I cannot simply look to the content of video itself and the fact that Hayes, a male supervisor, sent it to two female subordinates, Officer 1 and Officer 2 Instead, I must find that Officer 1 and/or Officer 2 were, in fact, offended by the video, and it had the effect of rendering their work environment sexually hostile. On the evidence presented, I must conclude that the answer is no.

Here again, Officer 1 testimony and her prior statements to the investigators fall short of satisfying this standard.

In testifying, she confirmed never having watched the video. Her knowledge of its contents, she explained, is limited to the still image that appears at the start of the video

---

[12] As noted above, Officer 2 did not testify in this matter. Without the context that her testimony would have provided, I cannot draw any conclusions from her entries in the August 13, 2018 text exchange relative to whether she considered Hayes' texts to be sexually offensive or harassing. Her statements during the EEO and IAD investigation represent hearsay. Therefore, without being subject to the test of cross-examination, I cannot accept those statements for the truth of the matter asserted insofar as they bear on the issues at the heart of this case.

EXHIBIT A-017

before it is played.  This image depicts a dog with its snout between a woman's legs in the area of her genitalia, indicating the video shows a sexual act between a dog and a woman.

On the basis of this information, she averred finding the video "gross," but did not consider it to be an attempt by Hayes to sexually harass her.  Moreover, she made no claim that her receipt of the video adversely affected her work environment.  In fact, she acknowledged having no reason to conclude that Hayes should not have remained as her supervisor.

In sum, while Hayes' transmission of the video while on duty was highly inappropriate, especially with the recipients being two subordinates, I am not convinced, on the evidence presented, that he committed sexual harassment in violation of Directive 8.7, by doing so.[13]

### Section 1-§021-10 (Conduct Indicating Little/No Regard for Responsibilities)

By this Charge, the City asserts that subsequent to August 13, 2018, Hayes made statements and offers to Officer 1 and Officer 2 designed to discourage them from bringing a complaint against him and/or being truthful when questioned by IAD as to the events of August 13, 2018.  (City Exhibit 6.)[14]

On the evidence presented, I am satisfied that this charge has been substantiated insofar as it concerns Hayes' statements to Officer 1

---

[13] Without Officer 2's testimony, I am without basis to determine whether Hayes' transmission of the video constituted sexual harassment as to her.  Her August 13, 2018 text response to the video (i.e., "Please don't send me things like that.") is inconclusive for this purpose.  Further, as noted above, the statements she gave to Conway and Smith represent hearsay, and, as such, standing alone, cannot be credited for the truth of the matter asserted insofar as they bear on the issues central to my decision here.

[14] This Charge also states that Hayes' August 13, 2018 text and phone calls with Officer 1 and Officer 2 as well as the video that he sent to them violated numerous Department Policies.  Other than Department Disciplinary Section 1-§025-10, which prohibits on duty inappropriate sexually based communications and forms the basis of the third charge, such department policies were not identified.  As such, no basis exists for me to find Hayes' guilty of this portion of the charge.

EXHIBIT A-018

In support, I rely upon [Officer 1]'s testimony.  It was clear and unequivocal.  She did not waiver under cross-examination.  Nor did she depart from her prior statements to Conway and Smith.

In particular, she affirmed the details of a brief conversation that she had with Hayes in or about October 2018, at the 24th District Office.  She clearly recalled that after apologizing for sending the video and being told she no longer had it, he suggested that if she was interviewed by IAD, she could respond that she had no recollection.  In response, she told him she would not lie and terminated the conversation.

In crediting this very precise account, I also take note that [Officer 1] exhibited no animus towards Hayes.  Her testimony regarding the events of August 13, 2018 makes this plain.  There too, she recounted the facts with precision and free of any embellishments that might have been adverse to Hayes.

In contrast, I found Hayes's testimony on this issue far less credible.  He did not deny the conversation with [Officer 1] but provided a much more cursory account, noting only that they discussed their children.  His denial of the key allegations struck me as perfunctory, which he then attempted to justify by claiming that it would not have made sense to make such statements to [Officer 1] as the matter was already then widely known.

In sum, crediting [Officer 1] testimony, I conclude that Hayes made the statements attributed to him suggesting that [Officer 1] could feign a lack of recall if EEO/IAD questioned her regarding the video.  Accordingly, I am satisfied that the City has satisfied its burden of substantiating that Hayes is guilty of the charged violation of Section 1-§021-10.[15]

---

[15] In reaching this conclusion, I do not rely upon [Officer 2]'s statements to Conway and Smith.  As noted above, those statements constitute hearsay.  Inasmuch, as they bear on a critical issue in this case, they

EXHIBIT A-019

**Section 1-§025-10 (On-Duty Inappropriate Sexually Based Communications)**

The gravamen of this charge involves Hayes's August 18, 2022 transmission of the sexually explicit and disturbing video to Officer 1 and Officer 2 the facts of which are not in dispute.

The record here, including the video, witness testimony and Hayes' admissions, confirms a per se violation of this Disciplinary Code Section. Indeed, the Union does not argue otherwise.

Accordingly, I am compelled to find that the City has satisfied its burden of establishing that Hayes committed this offense, as charged.

**Section 8-§003-10 (Failure to Properly Supervise Subordinates)**

In support of this charge, the City relies upon the same conduct referenced in the first three charges. It avers that by these actions, Hayes deprived Officer 1 and Officer 2 of their right to be professionally supervised. In addition, it notes that he misused his supervisory authority by granting them slide time rather than requiring them to return to the District, upon completing their court appearance, so as to finish the balance of their scheduled tour of duty, as required by Department directive/policy.

Insofar as this charge alleges Hayes improperly granted Officer 1 and Officer 2 early release, I find it unsupported by the evidence. Officer 1 and Hayes' testimony regarding the slide time practice, in general, and its applicability on August 13, 2018 due to a lack of equipment given the number of officers scheduled that day in 24th District, stands

---

cannot be credited, at least not without some corroboration, which is lacking here. Officer 1 testimony did not provide such necessary support for the statements that Officer 2 claimed Hayes made to her after she joined their October 2018 conversation on this subject. Instead, in her account, Officer 1 addressed only the statements that Hayes made to her.

EXHIBIT A-020

unrefuted.  Further, no contrary Department directive/policy was included in the record here.

I do, however, find sufficient evidence to conclude that Hayes failed to properly supervise Officer 1 and Officer 2 on August 13, 2018.  As I noted above, while Hayes' interaction with Officer 1 and Officer 2 did not constitute sexual harassment, it was nonetheless highly unprofessional and inappropriate.  Even allowing for some level of banter between a ranking officer and his/her subordinates, Hayes, exceeded reasonable bounds, such as with his discussion of Office 1's bathroom habits and his use of sexual innuendo.

Moreover, his question and answer game for granting Officer 1 and Officer 2 slide time involved exchanging more than 140 texts, as well as multiple phone calls.  Plainly, this conduct is at odds with the professional supervision expected of him as a Lieutenant within the Department.  In addition to the undue familiarity, it contravenes the expected supervisory message that officers, while on duty, should devote their full time and attention to the diligent performance of their official job duties.

Accordingly, for these reasons, I am satisfied the City has substantiated that Hayes is guilty of this charge.

**Penalty**

Having found that City, by the weight of the credible evidence, has demonstrated that Hayes is guilty of all but the charge alleging sexual harassment, there remains the question of penalty.

In doing so, I must necessarily look to the Department's Disciplinary Code, which is included in the parties' Agreement.  For each offense, the Code specifies a penalty

-21-

EXHIBIT A-021

range, depending on whether it is a first or repeat offense. Determining the appropriate penalty for a proven infraction requires that I apply the specified range with consideration to the totality of the circumstance, including all exacerbating and mitigating factors.

Turning to the charge involving Disciplinary Code Section Section 1-§021-10 (Conduct Indicating Little/No Regard for Responsibilities), the penalty range is a thirty-day suspension or dismissal. Obviously, this disciplinary provision covers a very large swath of potential misconduct.

Here, Hayes' offense concerned his attempt to influence Officer 1 statements to IAD; namely, by suggesting that if she no longer had the video, she could feign a lack of recollection as to its contents. This transgression is no minor matter. It bears on Hayes' integrity and reputation for truth and honesty, both of which are central to his role in law enforcement. Further, the statements were made to a subordinate for whom he had direct supervisory responsibility, thereby compounding the gravity of his offense.

At the same time, I take note of the mitigating factors. These include: (1) Hayes' distinguished eighteen-year career, in which he rose through the ranks to Lieutenant; (2) his lack of prior discipline in seventeen years; (3) the absence of any similar conduct by him prior to or subsequent to October 2018.

On balance, and weighing the totality of the circumstances, I conclude that dismissal represents an excessive response in this instance. Instead, a thirty-day suspension represents the appropriate penalty. I am confident that Hayes can learn from this experience, reform his behavior and provide the same exemplary service that he was known for during his first sixteen years with the Department.

EXHIBIT A-022

Accordingly, for all these reasons, I conclude that the Department lacked just cause to dismiss Hayes for this offense.  It did, however, have just cause to impose a thirty-day suspension.

Moving on to the third charge -- Section 1-§025-10 (On-Duty Inappropriate Sexually Based Communications), I am satisfied that the underlying circumstances call for imposing a penalty at the more severe end of the range (i.e., fifteen-day suspension).

In reaching this decision, I take note that the video contained a graphic and extremely troubling depiction of a sex act between a woman and dog.  As such, his violation Section 1-025-10 was not a close call.  To the contrary, it was so far over the line that it should have been painfully obvious to Hayes.  Indeed, as he testified, seconds after sending the video, he realized it had been a mistake to do so.

Further, the gravity of this offense is heightened given that the recipients of the video, Officer 1 and Officer 2 were two of Hayes' subordinates.   As a supervisor, Hayes had a responsibility to set an example of compliance with all Department directives and its disciplinary code.

Accordingly, for these reasons, I am satisfied that the appropriate penalty for Hayes' commission of this offense is a fifteen-day suspension.

Finally, as to the last charge, Section 8-§003-10, here too, I conclude the maximum penalty is warranted (i.e., five-day suspension).  As detailed above, on August 13, 2018, Hayes' conduct relative to Officer 1 and Officer 2 represented a serious departure from the professional supervision that he was obligated to provide them.  For this reason, I am convinced that a penalty of a five-day suspension is a commensurate response to this proven misconduct.

EXHIBIT A-023

Accordingly, for all these reason, I find that the City lacked just cause to discharge Hayes, effective July 9, 2020.  Instead, the appropriate penalty for the misconduct established is a fifty-day suspension.  As such, the Union's grievance is granted, in part, and I direct the City to promptly reinstate Hayes to his former position with the Department without loss of seniority. The City is also directed to make payment to him for all wages and benefits lost as a consequence of his discharge through the date of his reinstatement, excluding the period of the disciplinary suspension that I have found to be the appropriate penalty.  This make whole relief shall include lost overtime, as to which a proper showing is made by the Union; namely, sufficient evidence demonstrating to a reasonable certainty that: (1) but for Hayes' discharge, overtime would have been offered to him; and (2) had such overtime been offered to Hayes, he would have worked it.  In addition, I instruct the Department to revise Hayes' personnel record to delete all reference to his July 9, 2020 discharge to the maximum extent permitted under the governing law.

EXHIBIT A-024

## AWARD

1. The grievance is granted, in part.

2. The City did not have just cause to discharge Marc Hayes, effective July 9, 2020, but did have just cause to impose a disciplinary suspension without pay for fifty days.

3. The City will promptly reinstate Marc Hayes to his former position with the Department without loss of seniority, and revise his personnel records to delete all reference to his July 9, 2020 discharge to the maximum extent permitted under the governing law.  In addition, the City will make him whole for all wages and benefits lost as a consequence of his discharge through the date of his reinstatement, less all outside wages and other earnings received by him as to this period and excluding the period of the unpaid suspension that I have found to be the appropriate disciplinary response.  This make whole relief shall include lost overtime, as to which a proper showing is made by the Union; namely, sufficient evidence demonstrating to a reasonable certainty that: (1) but for Hayes' discharge, overtime would have offered to him; and (2) had such overtime been offered to Hayes, he would have worked it.

4. I will retain jurisdiction of this matter to resolve any dispute as to the monies to be paid to Marc Hayes based on this award, including the issue of whether he satisfied his obligation to mitigate his damages.

July 22, 2022                              _____
                                          David J. Reilly, Esq.
                                          Arbitrator


STATE OF NEW YORK       )
                        )       ss.:
COUNTY OF NEW YORK   )


        I, DAVID J. REILLY, ESQ., do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.


July 22, 2022                              _____
                                          David J. Reilly, Esq.
                                          Arbitrator

EXHIBIT A-025